IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY REILAND<br><br>**Plaintiff,**<br><br>v.<br><br>INDEPENDENT SCHOOL DISTRICT<br>NO. 11 OF TULSA COUNTY,<br>OKLAHOMA, et al.,<br><br>**Defendants.** | Case No. 22-CV-484-JFH-JFJ |

## OPINION AND ORDER

This matter comes before the Court on the Motion for Temporary Restraining Order and Temporary Injunction ("Motion") filed by Plaintiff Timothy Reiland ("Plaintiff"). Dkt. No. 5. Plaintiff's Motion was originally filed in Tulsa Country District Court Case No. CS-2022-4426 on October 28, 2022. Defendant Independent School District No. 11 of Tulsa County ("Defendant School District") removed that action to this Court on October 31, 2022. Dkt. No. 2. Defendant Margaret Coates, in her official capacity as Superintendent ("Defendant Margaret"), consented to the removal. Dkt. No. 2-5. Plaintiff's Motion requests that the Court "enter a temporary restraining order and/or a temporary and/or permanent injunction to restrain and/or enjoin Defendants from further banning Plaintiff from school properties and activities while this litigation is pending." Dkt. No. 5 at 4. For the following reasons, Plaintiff's Motion [Dkt. No. 5] is GRANTED.

## BACKGROUND

Plaintiff is a parent of two children who attend Owasso Public Schools ("OPS"). Dkt. No. 5 at 2. When Plaintiff's daughter checked out a book, *Blankets*, from the OPS library, Plaintiff became concerned regarding the content and nature of the book and its accessibility to students in

the OPS library. *Id*. As a result, Plaintiff became politically active in OPS Board meetings and parent outreach in an effort to effect change on Defendants' book selection policy. *Id*. Plaintiff attended an OPS Board meeting on October 10, 2022. *Id*. At this Board meeting, Plaintiff expected the Board to vote on a new policy which would restrict "pornographic content" from the OPS library. Dkt. No. 5 at 2. Instead, the policy presented did not include a "pornographic restriction" and the Board tabled the vote to take up at a special meeting closed to the public. *Id*.

After the Board meeting, Plaintiff waited in the parking lot for OPS Board member, Brent England, to inquire further about the Board's decision that evening. *Id*. While he was waiting, Art Haddaway, a reporter for the Tulsa World and the manger of Owasso Reporter media page, walked to his car which was parked near Plaintiff. *Id*. at 16. Plaintiff yelled out to Mr. Haddaway, asking him "[w]hen you gonna publish that bullshit, Mr. Reporter?" Dkt. No. 5 at 18. Mr. Haddaway responded with "I'm not sure, have a good night," and left the parking lot in his vehicle. *Id*.

Shortly thereafter, Mr. England entered the parking lot, walking toward his car. *Id*. at 20. Paul Croft, OPS Director of Safety and Security, was also in the parking lot and witnessed the exchange between Plaintiff and Mr. England. *Id*. Mr. Croft reports that Plaintiff confronted Mr. England about why the Board would not put "pornography" in the OPS book selection policy. *Id*. Plaintiff and Mr. England went back and forth regarding the definition of "pornography" and the content of the book, *Blankets*. Dkt. No. 5 at 20-21. During the conversation, Mr. England placed his hand on Plaintiff's shoulder and Plaintiff put his arm around Mr. England. *Id*. Neither party asserts that this physical touch was aggressive or confrontational. *Id*.; *see also* 2-1 at 8. Mr. England then explained that Plaintiff's daughter could get that same book at a public library. *Id*. Plaintiff responded "[t]hat's fucking bullshit . . . I don't want my kid to get pornography books at

a public school." Dkt. No. 5 at 21. At that point, Mr. Croft interjected and told Plaintiff and Mr. England that it was time for both of them to leave. *Id*. Plaintiff told Mr. England again, "[t]hat's fucking bullshit . . . you need to fix it." *Id*. Then, as he was getting into his car, Plaintiff shouted to Mr. England, "have a good evening and I still like you [Mr. England]." Both Plaintiff and Mr. England left the parking lot. *Id*. at 31.

On October 12, 2022, Plaintiff received a letter from Defendant Coates informing him that he had "committed one or more acts that interfere[d] with the peaceful conduct of activities on District property and [his] presence interfere[d] with the peaceful conduct of activities on District property." Dkt. No. 5 at 14. The effect of the letter was to ban Plaintiff from "Owasso Public Schools and all of its grounds (including sports venues)" for a period of six months. *Id*. Plaintiff was further banned from "any District activity or field trip not conducted on school property" as it was determined that his "presence [was] a threat to the peaceful conduct of students." *Id*. The letter gave Plaintiff the right to "request a reconsideration" of the ban within five calendar days. *Id*.

On October 24, 2022, Defendant Coates issued a memorandum to "set forth the basis for [her] letter of October 12." Dkt. No. 5 at 16-23. The memorandum clarified that "the basis for [her directive prohibiting Plaintiff from OPS grounds was] solely related to [Plaintiff's] conduct that took place in the parking lot of the Education Service Center [ ] after the conclusion of the October 10, 2022 meeting of the District's Board of Education." *Id*. at 16. It is this broad-based 6-month ban that Plaintiff seeks to enjoin Defendants from enforcing during the pendency of this litigation.

3

**DISCUSSION**

### A. Personal Jurisdiction

Plaintiff seeks preliminary injunctive relief in the form of a temporary restraining order ("TRO") and a preliminary injunction. Dkt. No. 5. Before a district court may issue such relief, it must determine whether there is a reasonable probability that it has personal jurisdiction over the defendant. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 19 F. App'x 815, 822 (10th Cir. 2001). At the pleading stage, a plaintiff need only establish a prima facie showing of personal jurisdiction. *Id.* Here, Plaintiff's Motion sets forth proper jurisdiction and Defendants, in removing this action, consent to jurisdiction in this Court. *Id.; see also* Dkt. No. 2 at 2. Therefore, the Court finds that it has personal jurisdiction over Defendants.

### B. Motion for Temporary Restraining Order and Preliminary Injunction

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking preliminary injunctive relief through a TRO or a preliminary injunction must show that: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted). The primary goal of preliminary injunctive relief is to preserve the pre-trial status quo. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). In considering a motion for such relief, the Court determines the status quo by looking "to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotation marks and citation omitted).

### 1. Likelihood of Success on the Merits

In the First Amendment context, "the likelihood of success on the merits will often be the determinative factor" because of the seminal importance of the interests at stake. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (internal quotation marks omitted); *see also Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Because of the importance of the interests at stake, the Court will begin its analysis on Plaintiff's First Amendment claims. Further, because injunctive relief can be granted upon a showing of success on any particular claim, if the Court determines that Plaintiff is likely to succeed on the merits of his First Amendment claims it need not make a finding on his other claims.

### a. Retaliation under the First Amendment

Plaintiff contends that in response to his disagreement with the actions of the OPS Board and his expression of such disagreement, Defendants have retaliated against him by banning him from OPS grounds. Dkt. No. 2-1 at 15-17. "[T]he purpose behind the Bill of Rights, and of the First Amendment in particular[, is] to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). Thus, "the First Amendment bars retaliation for protected speech." *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998). To establish a retaliation claim under the First Amendment, the following elements must be satisfied: (1) the plaintiff "was engaged in constitutionally protected activity"; (2) defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2022).

It is well established that the right to criticize public officials and the right to "petition the Government for a redress of grievances" are protected activities under the First Amendment. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964); *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, (1967). Plaintiff's criticism of the Board's decision as "fucking bullshit," while vulgar and arguably unnecessary, is protected speech. The element is satisfied.

Next, Defendants' action of banning Plaintiff from OPS grounds has an obvious chilling effect. Under Defendants' ban, Plaintiff is no longer able to attend OPS Board meetings or meet with OPS Board members on OPS grounds, thus chilling Plaintiff's ability to criticize Board decisions and to "petition the [Board] for a redress of grievances." This element is also satisfied.

Finally, it is clear that Defendants' ban was substantially motivated as a response to Plaintiff's criticism of the Board's decision and his petition for a redress of grievances. Defendant Coates' memorandum explains that Defendants' decision to ban Plaintiff was "*solely* related to [Plaintiff's] conduct that took place in the parking lot of the Education Service Center [ ] ***after*** the conclusion of the October 10, 2022 meeting of the District's Board of Education." Dkt. No. 5 at 16 (emphasis added and in original). Because the Court has determined that Plaintiff's "conduct that took place in the parking lot of the Education Service Center [ ] after the conclusion of the October 10, 2022 meeting of the District's Board of Education" was protected speech, this element is satisfied. Therefore, the Court finds that Plaintiff is likely to succeed on the merits of his First Amendment claim and this factor weighs heavily in favor of granting preliminary injunctive relief.

### 2. Irreparable Injury

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy*, 912 F.3d at 1270 (internal quotation marks and citation omitted). The plaintiff must therefore demonstrate a

"significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1270–71 (10th Cir. 2022) (internal quotation marks and citation omitted). "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted). Courts have found that damage awards would be inadequate in a number of circumstances, especially in situations where: (1) the award would be speculative because the damages are not easily quantifiable; and (2) where the injury is of a continuing nature. Charles A. Wright and Arthur R. Miller, 11A FEDERAL PRACTICE & PROCEDURE § 2944 (3d ed., Apr. 2018) (collecting cases).

Plaintiff has demonstrated irreparable harm. First, as the Court explained *supra*, Plaintiff has a fair chance of succeeding on the merits on at least his First Amendment claim. It is well established that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Heideman,* 348 F.3d at 1190.

Additionally, as detailed by Plaintiff, Defendants' near-absolute exclusion of Plaintiff from all events at OPS has the effect of barring him from dropping off and picking up his children from school, attending parent-teacher conferences, and attending his children's extracurricular activities.[1] In the absence of injunctive relief, Plaintiff's ban from these events is certainly an ongoing injury not cable of ready quantification. This factor weighs in favor of granting preliminary injunctive relief.

---

[1] The Court notes that while Plaintiff's offensive conduct occurred *outside* of an OPS building, *after* an OPS event, and *outside* the presence of students, Defendants' all-encompassing ban appears overly broad and disproportionate.

7

### 3. Balance of Harms

Compared to the irreparable harm that Plaintiff will suffer in the absence of injunctive relief, the Court finds that the harms to Defendants are, as Plaintiff states, largely illusory and speculative. First, the Court finds this to be an isolated incident rather than a history or pattern of behavior. Defendant Coates' memorandum explains that Defendants' ban of Plaintiff "is *solely* related to [Plaintiff's] conduct that took place in the parking lot of the Education Service Center [ ] ***after*** the conclusion of the October 10, 2022 meeting of the District's Board of Eduction." Dkt. No. 5 at 16 (emphasis added and in original). The memorandum further states that "[i]f Plaintiff does not suffer a consequence for his actions on the night of October 10, what is going to keep it from occurring again; whether after another Board meeting; when meeting with a teacher or other staff member; or attending an athletic event where he disagrees with a coach's decision or an official's call?" *Id*. at 23. Defendants' list of "harms" can only be described as an unsupported list of "what ifs."

Additionally, Defendants are not without means to protect OPS students, faculty, and Board members. Should Plaintiff's conduct on school property become disruptive, Defendants are within their right to ask Plaintiff to leave school grounds and can seek intervention by school resource officers or other law enforcement officers if necessary. Indeed, Defendants could use their authority under OKLA. STAT. TIT. 70 § 24-131, the basis for their ban of Plaintiff here, to remove Plaintiff from OPS grounds. This factor weighs in favor of granting preliminary injunctive relief.

### 4. Public Interest

Finally, Plaintiff "must also demonstrate that issuance of the preliminary injunction is not adverse to the public interest." *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone*

*River Power, Inc.*, 805 F.2d 351, 357 (10th Cir. 1986). At first blush, the public interest factor appears to be evenly balanced between the parties. One the one hand, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111 at 1132 (10th Cir. 2012) (internal citation omitted). On the other hand, safety in schools is an undeniable governmental interest. *See e.g., Roska ex. rel. Roska v. Sneddon*, 437 F.3d 964, 972 (10th Cir. 2006) (acknowledging that "[t]he safety and welfare of children" is a recognized governmental interest). However, as previously noted, even if the Court grants injunctive relief, Defendants would not be deprived of their ability to remove Plaintiff from events if his conduct causes a disturbance. *See* OKLA. STAT. TIT. 70 § 24-131. Therefore, under the circumstances presented here, the Court finds that the public interest favoring the protection of constitutional rights prevails.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Timothy Reiland's Motion for Temporary Restraining Order and Temporary Injunction and Brief in Support [Dkt. No. 5] is GRANTED.

IT IS FURTHER ORDERED that Defendants Independent School District No. 11 of Tulsa County, Oklahoma, a/k/a Owasso Public Schools, and Margaret Coates, in her official capacity as Superintendent, are hereby temporarily restrained from banning Plaintiff Timothy Reiland from Owasso Public School grounds as set forth in the letter from Defendant Coates dated October 12, 2022 [Dkt. No. 5 at 14].

IT IS FUTHER ORDERED that this Temporary Restraining Order shall remain in full force and effect for fourteen (14) days unless otherwise dissolved by this Court or extended for good cause. A hearing is set for November 14, 2022 at 10:00 a.m. to hear evidence and argument

as to whether this Temporary Restraining Order should be converted into a preliminary injunction under applicable law.

DATED this 1st day of November 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE