IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

TIMOTHY REILAND

   Plaintiff,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 11 OF TULSA COUNTY,
OKLAHOMA, et al.,

   Defendants.

Case No. 22-CV-484-JFH-JFJ

## OPINION AND ORDER

This matter comes before the Court on the Motion for Temporary Restraining Order and Temporary Injunction ("Motion") filed by Plaintiff Timothy Reiland ("Plaintiff"). Dkt. No. 5. This Court issued a Temporary Restraining Order ("TRO") on November 1, 2022. Dkt. No. 8. Defendants Independent School District No. 11 of Tulsa County, Oklahoma, a/k/a Owasso Public Schools, and Margaret Coates, in her official capacity as Superintendent, (together, "Defendants") filed a response in opposition ("Response") on November 10, 2022. Dkt. No. 9. The Court held an evidentiary hearing on November 14, 2022 on the issue of whether the Court's TRO would convert to a preliminary injunction. For the following reasons, Plaintiff's Motion [Dkt. No. 5] is GRANTED, and the Court's TRO [Dkt. No. 8] is converted to a preliminary injunction.

## BACKGROUND

The Court adopts the factual background as set forth in its TRO [Dkt. No. 8 at 1-3] and further sets forth the following facts: Plaintiff submitted a request for reconsideration of his ban, which was heard by the Owasso Public Schools' Board of Education ("Board") on October 31, 2022. Dkt. No. 9 at 10. At the meeting, the Board voted to uphold Plaintiff's ban. *Id.* On November 1, 2022, this Court issued its TRO, temporarily restraining Defendants from enforcing

Plaintiff's ban. Dkt. No. 8. In light of the TRO, the Board held a special meeting on November 9, 2022 to reconsider Plaintiff's ban. Dkt. No. 9 at 10. After deliberation, the Board rescinded the ban as it related to Plaintiff's interaction with Board Member, Brent England, but affirmed the ban as it related to Plaintiff's interaction with Art Haddaway, a Tulsa World reporter. *Id*. Specifically, the Board "look[ed] only at Plaintiff's conduct towards Mr. Haddaway" and voted to affirm Plaintiff's ban based on "a desire to ensure that visitors who come onto School District premises feel safe and secure." *Id*.

## DISCUSSION

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking preliminary injunctive relief through a TRO or a preliminary injunction must show that: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted). While it is true that injunctive relief is an extraordinary relief, this Court finds that the First Amendment is an extraordinary right, deserving of extraordinary relief.

### I.      Basis for Defendants' Ban of Plaintiff

Defendants first argue that a temporary injunction is no longer necessary because the ban is no longer based upon Plaintiff's protected speech with Board Member, Brent England. Dkt. No. 9 at 6-7. Instead, Defendants state that their ban is now based entirely on Plaintiff's interaction with Mr. Haddaway.

While the exact dialogue exchanged between Plaintiff and Mr. Haddaway is in dispute, the parties agree with the following regarding the interaction: (1) that Plaintiff expressed that the

Board's decision to table the vote on the policy banning pornographic content from the library was "bullshit"; and (2) that Plaintiff asked Mr. Haddaway whether he would be running a story regarding the Board's decision. Like Plaintiff's statements to Mr. England—that the Board's decision to table the vote on the policy banning pornographic content from the library was "fucking bullshit"—Plaintiff's statements to Mr. Haddaway also expressed dissatisfaction with the Board's inaction. Whether directed toward Mr. England or Mr. Haddaway, Plaintiff's statements expressed criticism of the Board. Defendants change of position is, in this Court's view, a distinction without a difference and a thinly veiled attempt to circumvent the Court's TRO.[1]

## II.    Injunctive Relief

### A.    Likelihood of Success on the Merits

Generally, Defendants argue that Plaintiff has not shown a substantial likelihood of success on the merits because "Plaintiff's speech is not entitled to protection." Dkt. No. 9 at 12. In furtherance of their position, Defendants cite to several cases which are clearly distinguishable from the case at bar. *Id*. at 12-14 (citing *Mayberry v. Indep. Scho. Dist. No.* 1, No. 08-cv-416-GFK-PJC, 2008 WL 5070703, at *11 (N.D. Okla. Nov. 21, 2008); *Goss v. Lopez*, 419 U.S. 565, 589-90 (1975); *Epperson v. State of Ark*., 393 U.S. 97, 104 (1968); *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999)).

First, Defendants cite to *Mayberry* for the proposition that "[c]ourts, including this one, have consistently held that parents have no constitutional right to be on a school premises." Dkt. No. 9 at 12-13 (citing *Mayberry,* 2008 WL 5070703, at *11). In *Mayberry*, the plaintiff, a parent

---

[1] While Plaintiff's expression of his opinion to Mr. Haddaway, a member of the press, is not considered a petition of the government for a redress of grievance, it nonetheless represents his criticism of government action, or in this case, inaction. The expression of one's dissatisfaction – in criticism of elected officials' decisions - are a fundamental precept of the First Amendment.

of a student at the school, was banned from the school after she repeatedly entered a classroom during school hours. 2008 WL 5070703, at *1. Plaintiff filed action in federal Court under the Fourteenth Amendment arguing that the school's ban deprived her of her "parental liberty interest" in the care, custody, and control of her children by being unable to come onto the school grounds. *Id*. The school filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id*. The Court granted the motion to dismiss finding that because plaintiff's purported "parental liberty interest" was not recognized under the Constitution, plaintiff's complaint did not raise a substantial federal question and, therefore, the Court did not have subject matter jurisdiction. *Id*. at *5. Here, Plaintiff's action arises under the First Amendment and, therefore, clearly raises a substantial federal question. *See* Dkt. No. 2-1. Further, Defendants do not dispute subject matter jurisdiction, as Defendants themselves removed this action to this Court. *See* Dkt. Nos. 2 and 2-5.

Next, Defendants cite to *Goss* for the proposition that the Supreme Court has "explicitly recognized that school authorities must have broad discretionary authority in the daily operation of public schools. This includes wide latitude with respect to maintaining discipline and good order." Dkt. No. 9 at 13 (quoting *Goss*, 419 U.S. at 589-90). First, Defendants fail to indicate that the quotation is taken from the *Goss* dissent. Regardless, this case is also factually distinguishable as it involved a class action lawsuit brought by students challenging a school's suspension policy under the Fourteenth Amendment's due process clause. *Goss*, 419 U.S. at 567-68. Again, the present case implicates the First Amendment.

In further support of their position that they should be granted broad discretion to enforce Plaintiff's ban, Defendants cite to *Epperson* for the proposition that "[c]ourts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and

4

which do not directly and sharply implicate basic constitutional values." Dkt. No. 9 at 13 (quoting *Epperson*, 393 U.S. at 104). This Court is not convinced that Plaintiff's conduct here could be classified as interfering with the "daily operation" of the school system, as the conduct occurred on a single occasion, in a parking lot, after school hours, and outside of any school related activity. And, likewise, this Court cannot be convinced that the First Amendment is not a basic constitutional value which would be directly and sharply implicated by the ban.

Finally, Defendants cite to *Lovern* in further support of their argument that Plaintiff's First Amendment rights were not directly and sharply implicated by the ban under the circumstances. Dkt. No. 9 at 13-14 (citing *Lovern*, 190 F.3d at 655). The Court first notes that this is nonbinding authority. Regardless, *Lovern* is also factually distinguishable. As Defendants point out, *Lovern* held that a public school had the authority to ban a parent from the school where the parent had engaged in a "continuing pattern of verbal abuse and threatening behavior toward school officials." *Id*. While the parent in *Lovern* displayed a pattern of harassing behavior—including harassing phone calls and letters to numerous school staff and school board members at both their work and homes over the course of several months—Plaintiff here made a statement to a reporter following a Board meeting on a single occasion. The evidence before the Court does not show a "continuing pattern of verbal abuse or threatening behavior" toward a school official, or otherwise. The Court is not convinced by any of Defendants' case citations here.

### i.     Retaliation Claim

As discussed in the Court's TRO, to establish a retaliation claim under the First Amendment, the following elements must be satisfied:  (1) the plaintiff "was engaged in constitutionally protected activity"; (2) the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity";

5

and (3) the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *See* Dkt. No. 9 at 5 (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2022)). Defendants first argue that Plaintiff's retaliation claim fails on the first element because Plaintiff was not engaged in constitutionally protected speech. Dkt. No. 9 at 14-15. Specifically, Defendants argue that because Plaintiff's speech occurred in the school parking lot, it must be examined under a nonpublic forum analysis. *Id*.

"Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800) (1985)). Generally, there are four types of fora: (1) "traditional public fora ('streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions')"; (2) "designated public fora (public property which the State has opened for use by the public as a place for expressive activity)"; (3) limited public fora (government property which is opened for a "limited [ ] use by certain groups or dedicated solely to the discussion of certain subjects"); and (4) "nonpublic fora (public property which is not by tradition or designation a forum for public communication"). *Doe v. City of Albuquerque*, 667 F.3d 1111, 1128 (10th Cir. 2012).

Defendants concede that the Board meeting falls into the "limited public forum" category, but argue that the parking lot after the meeting falls into the "nonpublic forum" category. Dkt. No. 9 at 15. Defendants cite to Fourth Circuit authority in support of this position. *Id*. (citing *Grattan v. Board of School Com'rs of Baltimore City*, 805 F.2d 1160, 1163 (4th Cir. 1986)). In

*Grattan*, the Fourth Circuit determined that a school parking lot was a nonpublic forum for purposes of its First Amendment analysis where the plaintiff was distributing flyers in the school parking lot for an organization unrelated to the school. 805 F.2d at 1161-63. Specifically, the *Grattan* Court determined that plaintiff was not present on school grounds to conduct "lawful business," or business related to the educational purposes of the school. *Id*. at 1163. Rather, plaintiff was on school grounds, uninvited, to advance union politics unrelated to any educational activities. *Id.*

Unlike the plaintiff in *Grattan*, Plaintiff here was invited onto school property—as was the public at large—to attend the Board meeting on October 10, 2022. Defendant Coates testified at the hearing that the purpose of the parking lot is to provide parking for patrons who have business at the school. Plaintiff had business at the school—to attend the Board meeting—and, therefore, was properly in the parking lot following the Board meeting. Plaintiff was not distributing flyers, or otherwise using the parking lot as a platform to advance any agenda. Rather, the evidence shows that Plaintiff had a seventeen (17) second interaction with a fellow patron regarding his criticism of the Board. The Court is not entirely persuaded that the parking lot is a nonpublic forum under this particular set of circumstances.

Regardless, even if the parking lot is considered a nonpublic forum here, Plaintiff is still likely to succeed on the merits. "Access to a nonpublic forum . . . can be restricted as long as the restrictions are 'reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Verlo*, 820 F.3d at 1128 (quoting *Cornelius*, 473 U.S. at 800); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). The reasonableness of the Government's restriction of access to a nonpublic forum must be assessed in

the light of the purpose of the forum and all the surrounding circumstances. *Cornelius*, 473 U.S.at 809 (1985).

Defendants argue that their restriction against "vulgar and profane speech is reasonable in light of its goal to encourage members of the public to attend Board of Education meetings without fear of harassment, intimidation, or being subject to vulgar and profane speech." Dkt. No. 9 at 11. Defendant Coates and other Board Members who testified at the hearing expressed that the ban was motivated by their desire to ensure a safe environment. Although maintaining a safe environment is reasonable on its face, when "assessed in the light of the purpose of the forum and all the surrounding circumstances," Defendants' reasoning appears to be pretext.

The evidence before the Court simply does not demonstrate that Plaintiff engaged in harassing or intimidating behavior. During the hearing, Mr. Haddaway testified that the entire exchange with Plaintiff lasted seventeen (17) seconds from start to finish. Mr. Haddaway stated that he did not interpret Plaintiff's statements toward him as threatening and that he did not have any concern for his safety. While he stated that Plaintiff used aggressive words (*i.e.*, "bullshit"), Mr. Haddaway stated that he did not feel that Plaintiff was being aggressive toward him. Additionally, contradictory to Defendants' characterization of the exchange, Mr. Haddaway stated that he did not recall seeing Plaintiff deliberately moving toward his vehicle and that Plaintiff did not have to move out of the way in order for Mr. Haddaway to get into his vehicle. Mr. Haddaway further testified that he did not subsequently express safety concerns regarding his presence on the school grounds or make any request for increased security.

Furthermore, Defendant Coates testified that she did not speak with Mr. Haddaway about the incident until October 18, 2022, six (6) days *after* she issued the ban. Mr. Haddaway did not provide Defendants with a written statement regarding the incident nor did he appear to provide

testimony at the two subsequent Board meetings regarding Plaintiff's ban. Indeed, the Board Members who testified stated that Mr. Haddaway's testimony at the injunction hearing was the first time that they heard about the incident directly from Mr. Haddaway himself.

Finally, although not outcome determinative for purposes of this Order, the Court has some doubt whether Plaintiff's ban is actually authorized under OKLA. STAT. TIT. 70 § 24-131. Under the statue, the superintendent or principal of a school has the authority to order a person off school property "when it *appears* that the presence of such person *is* a threat to the peaceful conduct of school business and school classes." OKLA. STAT. TIT. 70 § 24-131 (emphasis added). The use of the active voice—"*appears* that the presence of such person *is* a threat"—suggests that the authority is granted to dissolve active, present threats. *Id.* The statute further provides for "the *removal* of any individual" attending an official school activity . . . when the superintendent determines that a threat to the peaceful conduct of students "*exists*".[2] As applied here, Defendants have wielded § 24-131 to prevent some future hypothetical threat. *See* Dkt. No. 5 at 23 ("If Mr. Reiland does not suffer a consequence for his actions on the night of October 10, what is going to keep it from occurring again; whether after another Board meeting; when meeting with a teacher or other staff member; or attending an athletic event where he disagrees with a coach's decision or an official's call?").

Viewing Plaintiff's ban in light of all the surrounding circumstances, the Court finds that the restriction is not reasonable, but rather is an effort to suppress Plaintiff's expression merely because public officials oppose his view. Just as Plaintiff was engaged in constitutionally

---

[2] Similarly, OKLA. STAT. TIT. 21 § 1376 provides authority by the designated school official "to direct any person to *leave*" the school who interferes with the peaceful conduct of activities.

protected speech when expressing his criticism of the Board to Mr. England, Plaintiff was engaged in constitutionally protected speech when expressing his criticism of the Board to Mr. Haddaway.

Finally, as addressed in the TRO, the Court still finds that Defendants' ban caused the Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" and that Defendants' ban "was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell,* 219 F.3d at 1212. While it is true that Plaintiff may "petition the [Board] for a redress of grievances" by email, letter, or phone call, Defendants ignore that Plaintiff is no longer able meaningful participate in Board meetings. Even if "given broad permission to write the board or send a representative to the board meetings on [his] behalf, these do not constitute adequate alternative channels of communication." *See Wilson v. N.E. Indep. Sch. Dist.,* Case No. 5:14-CV-140-RP , 2015 WL 13716013 at *4, n.2 (unpublished) (as cited to by Defendants at Dkt. No. 9 at 20-21). Lastly, because the Court has determined that Plaintiff was engaged in protected speech, it further finds that Defendants' ban was motivated as a response to Plaintiff's exercise of that speech. Therefore, the Court finds that Plaintiff is likely to succeed on the merits of his retaliation claim under the First Amendment and this factor weighs heavily in favor of granting preliminary injunctive relief.

### ii. Prior Restraint

Defendants argue that Plaintiff's claims "also sound in prior restraint" and that Plaintiff would not likely succeed on the merits of any such prior restraint claim. Dkt. No. 9 at 14-15. "Generally, a 'prior restraint' restricts speech in advance on the basis of content and carries a presumption of unconstitutionality." *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 42 (10th Cir. 2013) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83 (1992); Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 978–79 (4th ed. 2011); *United States v.*

*Quattrone*, 402 F.3d 304 (2d Cir.2005) ("A prior restraint on speech is a law, regulation or judicial order that suppresses speech ... on the basis of the speech's content and in advance of its actual expression.") (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993))). One type of prior restraint is generally referred to as an "administrative licensing scheme." *Id*. "[A]n administrative licensing scheme does not usually target a particular speaker or instance of speech. Rather, it requires a speaker to obtain approval before engaging in certain forms of speech in a given forum . . . ." *Id*. Here, while the restraint does target a particular speaker, it most resembles an administrative licensing scheme because it requires preapproval from Defendant Coates for Plaintiff to attend Board meetings, participate in school events, or otherwise be present on the school grounds. *Id*. (holding that a school district's preapproval requirement for student speech resembled an administrative licensing scheme under a prior restraint analysis).

Licensing restrictions that are content neutral and restrict only the time, place, and manner of speech are not subjected to the most rigorous prior restraint scrutiny. *Taylor*, 713 F.3d at 42–43. While Defendants' ban on Plaintiff appears content neutral on its face, "it allows officials to use discretion in deciding whether to allow speech, and nothing in the policy prevents officials from considering the subject matter of the speech when predicting whether it will cause substantial disruption." *Id*. (citing *Forsyth Cnty.,* 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation.")). Specifically, Plaintiff may only enter school grounds with written permission granted by the sole discretion of Defendant Coates. Dkt. No. 5 at 33. Defendant Coates discretion is without bounds and, therefore, could be withheld based upon the anticipated subject matter of Plaintiff's speech or in furtherance of a retaliation based upon Plaintiff's prior speech. This element of discretion calls for prior restraint scrutiny, which will survive First Amendment review only where (1) the ban contains procedural safeguards, such as

the ability to appeal the denial of permission granted, and (2) the ban imposes substantive constraints on official discretion that are constitutionally sufficient. *Taylor*, 713 F.3d at 43.

In *Taylor*, the Tenth Circuit found that the school district's restriction on student speech contained procedural safeguards where the restriction ensured "prompt and transparent decision making, requiring officials to approve or deny a student's request within five school days and to provide written explanation of any denial." *Id*. at 44. Further, students were "entitled to appeal an unfavorable decision, first to [the superintendent] and then to the Board of Education, which must provide a hearing within 10 school days and provide a decision at its next regular meeting." *Id*. The *Taylor* Court found these safeguards sufficient "to prevent viewpoint discrimination in the vast majority of circumstances." *Id*.

Regarding substantive constraints on official discretion, the *Taylor* Court noted that neither the Tenth Circuit nor the Supreme Court had specifically addressed the constitutionality of preapproval requirements in the school context. *Taylor*, 713 at F.3d 45. However, the Court found that while "[o]utside the school context, preapproval requirements that permit broad official discretion . . . often run afoul of the First Amendment . . . , in the school context officials may use more discretion in addressing student speech." *Id*. Even with more discretion, substantive constraints on official discretion will not be found "in the absence of 'facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities.'" *Id.* (citing *Tinker v. Des Moines Indep. Comm. Sch. Dist*., 393 U.S. 503, 514 (1969). Under this standard, a school may restrict speech in advance "that could be reasonably forecast to cause substantial disruption." *Id.* (*Tinker*, 393 U.S. at 514).

Here, there are no procedural safeguards on Defendant Coates' discretion to grant Plaintiff permission to attend Board meetings, participate in his children's school activities, or otherwise

go on the school grounds. There is no process for Plaintiff to appeal any denial of permission and Defendant Coates does not have to provide any explanation as to why permission was denied. Likewise, there are no substantive constraints on Defendant Coates' discretion. The evidence does not show any facts which might reasonably lead school authorities to forecast substantial disruption of or material interference with school activities. As the Court previously noted, the ban is largely based upon an unsupported list of "what ifs." Dkt. No. 8 at 8 (quoting Defendants' memorandum: "[i]f Plaintiff does not suffer a consequence for his actions on the night of October 10, what is going to keep it from occurring against; whether after another Board meeting; when meeting with a teach or other staff member; or attending an athletic event where he disagrees with a coach's decision or an official's call?" Dkt. No. 5 at 23.). Without any such safeguards, there is nothing to prevent viewpoint discrimination in Defendant Coates' decision to grant permission to enter the school grounds. Therefore, the Court finds that Plaintiff is likely to succeed on the merits of his prior restraint claim under the First Amendment and this factor weighs heavily in favor of granting preliminary injunctive relief.

### B.     Irreparable Injury

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy*, 912 F.3d at 1270 (internal quotation marks and citation omitted). The plaintiff must therefore demonstrate a "significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1270–71 (10th Cir. 2022) (internal quotation marks and citation omitted). "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion*

*Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted). Courts have found that damage awards would be inadequate in a number of circumstances, especially in situations where: (1) the award would be speculative because the damages are not easily quantifiable; and (2) where the injury is of a continuing nature. Charles A. Wright and Arthur R. Miller, 11A FEDERAL PRACTICE & PROCEDURE § 2944 (3d ed., Apr. 2018) (collecting cases).

Defendants argue that Plaintiff will not suffer irreparable injury because the ban "does not prevent Plaintiff from speaking to School District employees regarding any concerns he has about the education of his children." Dkt. No. 9 at 22. Defendants point to several instances since the ban where Plaintiff has communicated with various school staff members regarding aspects of his children's education. While it is true that Plaintiff may communicate with School District employees and Board Members via email, letter, phone call, "Google Meet," or other various forms of electronic communication, Defendants ignore the injury Plaintiff will suffer by not being able to physically attend his children's school events or attend Board meetings. As stated earlier, while Plaintiff may "petition the [Board] for a redress of grievances" by email, letter, or phone call, Defendants ignore that Plaintiff is no longer able meaningful participate in Board meetings.[3] This type of intangible harm is exactly the type of harm injunctive relief was intended for. The Court finds this factor weighs in favor of granting injunctive relief.

---

[3] *See Wilson v. N.E. Indep. Sch. Dist*., Case No. 5:14-CV-140-RP, 2015 WL 13716013 at *4 (unpublished) (as cited to by Defendants at Dkt. No. 9 at 20-21) (finding that even if "given broad permission to write the board or send a representative to the board meetings on [his] behalf, these do not constitute adequate alternative channels of communication.").

### C. Balance of Harms

Defendants argue that they have an interest "in preserving the safety and decorum" of the school grounds. Dkt. No. 9 at 22. The Court does not dispute this. However, Defendants are not without means to preserve the safety and decorum of the school grounds. Should Plaintiff's conduct on school property become disruptive of the peaceful conduct of school business or classes, Defendants are within their right to direct Plaintiff to leave school grounds pursuant to OKLA. STAT. TIT. 70 § 24-131 and OKLA. STAT. TIT. 21 § 1376. Balanced against Plaintiff's injury—the infringement upon his First Amendment rights—this factor weighs in favor of granting injunctive relief.

### D. Public Interest

The Court wants to make clear that it is, in absolutely no way, condoning harassing, intimidating, or threatening behavior. Further, the Court is not questioning Defendants' right to remove individuals displaying harassing, intimidating, or threatening behavior under OKLA. STAT. TIT. 70 § 24-131 or OKLA. STAT. TIT. 21 § 1376. However, the Court has found that the evidence simply does not indicate that harassing, intimidating, or threatening behavior occurred here. While the Court agrees that it is in the public's interest for Defendants to ensure the safety and security of students, staff, Board Members, and guests, the Court finds that it is also in the public's interest to preserve and uphold First Amendment rights. Therefore, under the circumstances presented here, the Court finds that the public interest favoring the protection of constitutional rights prevails.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Timothy Reiland's Motion for Temporary Restraining Order and Temporary Injunction and Brief in Support [Dkt. No. 5] is GRANTED.

IT IS FURTHER ORDERED that the Court's Temporary Restraining Order [Dkt. No. 8] shall be converted into a preliminary injunction under applicable law.

IT IS FURTHER ORDERED that Defendants Independent School District No. 11 of Tulsa County, Oklahoma, a/k/a Owasso Public Schools, and Margaret Coates, in her official capacity as Superintendent, are hereby enjoined from banning Plaintiff Timothy Reiland from Owasso Public School grounds as set forth in the letter from Defendant Coates dated October 12, 2022 [Dkt. No. 5 at 14], or as revised by subsequent Owasso School Board decision, during the pendency of this action.

DATED this 14th day of November 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE